Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ANTHONY G. MALAKAS,

               **Plaintiff,**

     **v.**

PORT AUTHORITY TRANS-HUDSON CORP.,

               **Defendant.**

**Civil Action No. 21-11845 (ES) (LDW)**

**OPINION**

SALAS, DISTRICT JUDGE

Plaintiff Anthony Malakas filed this suit against Defendant Port Authority Trans Hudson, Corp. ("PATH") for allegedly violating the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq*. (D.E. No. 1 ("Compl."); D.E. No. 11 ("Am. Compl.")). Before the Court is PATH's motion for summary judgment. (D.E. No. 26; D.E. No. 26-10 ("Mov. Br.")). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, the motion for summary judgment is **GRANTED**.

## I.       BACKGROUND

### A.     Factual Background

Unless otherwise noted, the following facts are not in dispute.[1]  Between 1992 and 1995,

---

[1]  The following facts are drawn from the parties' Statements of Undisputed Material Facts. (D.E. No. 26-11 ("Def. SUMF"); D.E. No. 29 at 9–14 ("Pl. SUMF")). The Court treats a fact as undisputed if it is admitted in the parties' Responses to the Statements of Undisputed Material Facts (D.E. No. 29 at 1–8 ("Pl. Resp. SUMF"); D.E. No. 31-5 ("Def. Resp. SUMF")), or if the parties fail to establish that the fact is subject to a genuine dispute (*see infra* at 3–4 n.3).

PATH employed Mr. Malakas as a Helper in the Signal Department and a Conductor.  (Def. SUMF ¶¶ 3–4).  Around 1995, Mr. Malakas switched to the role of Switchman and subsequently became an Engineer.  (*Id.* ¶¶ 5–7).  Then, around 2016, PATH awarded Mr. Malakas an overnight position in which he worked from 10:30 p.m. to 6:30 a.m.  (*Id.* ¶ 8).  As a senior employee, Mr. Malakas was responsible for "pulling the pit" and operating or flagging trains.  (*Id.* ¶ 9.)  The act of pulling the pit involved preparing trains for removal from the Harrison Car Maintenance Facility, subject to instructions on a "move sheet" provided by a supervisor.  (*Id.* ¶¶ 10–11).

On June 19, 2018, Mr. Malakas was tasked with pulling the pit.  (*Id.* ¶ 12).  At the start of his shift, Mr. Malakas received a move sheet from his supervisor, Shawn White, and then set out toward the track area, which was across the road from where he was positioned.  (*Id.* ¶¶ 13–15).  As he crossed, Mr. Malakas used a flashlight to inspect the ground in front of him.  (*Id.* ¶¶ 16–17).  Mr. Malakas observed a curb and ballast[2] near an opening in the guardrail at the other end of the road.  (*Id.* ¶ 18).  Mr. Malakas' route would take him over the curb, through the guardrail opening, past the ballast, across a conduit, over an electrified third rail, and ultimately through another guardrail opening at the Harrison Car Maintenance Facility.  (Pl. SUMF ¶¶ A–C).  This route was regularly used by other locomotive engineers.  (*Id.* ¶ A).  Indeed, Mr. White would often walk through openings and step directly over guardrails.  (*Id.* ¶ H).  Mr. Malakas did not notice anything unusual about the curb or the ballast that day.  (Def. SUMF ¶ 19).

However, when Mr. Malakas attempted to step over the curb with his right foot, the top of his boot failed to clear the curb.  (*Id.* ¶¶ 20–21).  As a result, Mr. Malakas fell forward, with his right knee landing in the ballast and his arms hitting the third rail.  (*Id.* ¶ 22).  After Mr. Malakas

---

[2]     Ballast is "broken stone, gravel, etc., used to form the bed of a railway, in which the sleepers are fixed." *Ballast*, OXFORD ENGLISH DICTIONARY, https://doi.org/10.1093/OED/1053141722 (last visited Dec. 28, 2023).

yelled out, Mr. White arrived at the scene and assisted him to a chair.  (*Id.* ¶¶ 23–24).  Operations Examiner Latifah McGilberry arrived shortly thereafter.  (*Id.* ¶ 25).  In fulfillment of her responsibilities, Ms. McGilberry captured photographs of the scene, completed certain portions of an employee injury form, and ensured that Mr. Malakas completed the other portions of the form.  (*Id.* ¶¶ 26–33).  Ms. McGilberry's photographs and completed form portions confirmed that no defect existed in the curb (*id.* ¶¶ 32–33) and that Mr. Malakas followed safety protocols (Pl. SUMF ¶ J).  Likewise, Mr. Malakas' completed form portions confirmed that he was unaware of any unsafe conditions, that circumstances such as lighting did not contribute to the injury, that he received safety training related to the activity, and that he could not have done anything to prevent the injury.  (Def. SUMF ¶ 30).

Mr. Malakas, Mr. White, and Ms. McGilberry all testified that employees were not required to use the route where the accident occurred and that at least two alternative routes were available.  (D.E. No. 26-3 ("Malakas Tr.") 73:20–74:12, 95:11–98:13; D.E. No. 26-8 ("White Tr.") 17:21–19:5; D.E. No. 26-5 ("McGilberry Tr.") 28:11–23, 57:3–61:8).  Relatedly, Mr. Malakas testified that he received training on how to maintain safety while traversing track areas (Malakas Tr. 27:10–28:1), and though Mr. White testified that he could not recall specific training, his testimony merely indicated that particular routes were not required (White Tr. 18:24–19:5).  The availability of alternative routes was further illustrated by photographic and aerial images.  (D.E. No. 26-4).  Finally, the use of alternative routes does not appear to have been precluded by temporal limitations, as Ms. McGilberry testified that pulling the pit did not involve time constraints.  (McGilberry Tr. 53:2–54:16).[3]

---

[3]    The parties purport to dispute the facts stated in this paragraph (Pl. Resp. SUMF ¶¶ 34–37; Def. Resp. SUMF ¶¶ D–G, I, K–O), but "a party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1)(A).  As detailed above, the record materials

Nevertheless, Mr. Malakas testified that PATH should have cut out the curb to create a ramp that resembled a driveway between the road and the track area. (Malakas Tr. 85:21–87:14). Similarly, shortly after the accident occurred, Mr. Malakas stated that PATH should have installed additional lighting around the curb. (Malakas Tr. 98:14–101:6).

### B.   Procedural History

On May 27, 2021, Mr. Malakas filed the instant action against PATH for allegedly violating FELA in connection with the injuries and corresponding damages he sustained. (Compl. ¶¶ 18–19). On October 8, 2021, Mr. Malakas amended his pleading to correct the date that the accident occurred. (Am. Compl. ¶¶ 10 & 17). After the parties completed fact discovery (D.E. No. 20 at 1), the Honorable Leda D. Wettre, U.S.M.J., found that adjudication of liability was necessary before a settlement could be reached (D.E. No. 25). Thereafter, on April 6, 2023, PATH filed a motion for summary judgment. (D.E. No. 26; Mov. Br.). Mr. Malakas filed an opposition on May 23, 2023 (D.E. No. 30 ("Opp. Br.")), and PATH filed a reply on May 30, 2023 (D.E. No. 31 ("Reply Br.")).

## II.   LEGAL STANDARDS

Summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006).

---

cited by the parties do not support the assertion that the facts are genuinely disputed. The only possible exception is a potential ambiguity with respect to whether the route at issue was the most common or convenient passage to the Harrison Car Maintenance Facility, or whether the route was ever intended as such a passage. (*See* White Tr. 25:22–27:2; McGilberry Tr. 21:9–23:7, 48:3–49:22). Because the facts stated in this paragraph do not encompass this potential ambiguity, the Court will consider them "undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

Therefore, a genuine issue of material fact exists when—in viewing the evidence and all reasonable inferences drawn from it in the light most favorable to the non-movant—a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

At summary judgment, "the judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Brooks v. Kyler*, 204 F.3d 102, 105 n.5 (3d Cir. 2000). The movant bears the initial burden of establishing that no genuine dispute of material fact exists, but the burden then shifts to the non-moving party to show the existence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). To meet this burden, the non-moving party must "counter with specific facts which demonstrate that there [is] a genuine issue for trial." *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996).

## III.   DISCUSSION

FELA was enacted against the backdrop of "exceptionally hazardous" working conditions for railroad employees that "'resulted in the death or maiming of thousands of workers every year.'" *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 691 (2011) (quoting *CONRAIL v. Gottshall*, 512 U.S. 532, 542, (1994)). The statute aimed to "'shif[t] part of the human overhead of doing business from employees to their employers,'" *id.* (quoting *Gottshall*, 512 U.S. at 542), and to "provide a federal remedy for railroad workers who suffer personal injuries as a result of the negligence of their employer or their fellow employees," *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 561 (1987). FELA has been described as a "broad remedial statute" that is to be liberally construed to accomplish Congress' objectives in passing it. *Id.* at 562.

A violation of FELA is established through "the elements of a common law negligence

action: duty, breach, foreseeability, and causation." *Infermo v. New Jersey Transit Rail Operations, Inc.*, No. 10-2498, 2012 WL 209359, at *7 (D.N.J. Jan. 24, 2012).  Under FELA, a railroad has a duty "to use reasonable care in furnishing its employees with a safe place to work." *Atchison Ry. Co.*, 480 U.S. at 558.  A railroad commits a breach of this duty "when it knew, or by the exercise of due care, should have known that its operations were inadequate to protect its employees." *Tramontano v. New Jersey Transit Rail Operations, Inc.*, No. 14-5706, 2023 WL 3248238, at *19 (D.N.J. May 4, 2023) (citations omitted).  Likewise, to establish foreseeability, the employee must show that the railroad possessed "actual or constructive" notice of the unsafe condition that resulted in injury.  *Wisowaty v. Port Auth. Trans-Hudson Corp.*, No. 11-2722, 2013 WL 103385, at *3 (D.N.J. Jan. 8, 2013) (citations omitted).  As to causation, the railroad will be held liable if its "negligence played any part, even the slightest, in producing the injury . . . for which damages are sought." *Gottshall*, 512 U.S. at 543 (citations omitted).  Indeed, the railroad will be held liable "even if the extent of the [injury] or the manner in which it occurred was not . . . foreseeable." *CSX Transp., Inc.*, 564 U.S. at 704 (citations omitted).

Here, the parties contest the elements of breach and foreseeability.  The Court addresses each element in turn and finds that neither element has been established.

### A.    Breach

The parties contest whether PATH should have known that its operations were inadequate to protect Mr. Malakas.  PATH argues that the evidence fails to show that the curb in question was defective, that a cut-out in the curb was necessary, or that a cut-out would have prevented the injury.  (Mov. Br. at 12, 14–18).  In response, Mr. Malakas argues that inadequate lighting was supplied to the curb and that a cut-out would have reduced the hazard.  (Opp. Br. at 14).

On the present record, the Court finds that PATH could not have breached a duty to Mr.

Malakas in connection with the curb.  Before the accident occurred, Mr. Malakas observed the curb and ballast, did not notice anything unusual about these conditions, and ultimately attempted to step over the curb.  Similarly, after the accident occurred, Ms. McGilberry confirmed that no defect existed in the curb and Mr. Malakas confirmed that he was unaware of any unsafe conditions.  This evidence suggests that the accident did not occur as a result of a failure to ascertain the curb or any defect therein.  Nor is there any evidence that the accident occurred as a result of inadequate lighting.  To the contrary, Mr. Malakas used a flashlight to observe the ground in front of him and subsequently confirmed that circumstances such as lighting did not contribute to the injury, which resulted when his boot failed to clear the curb.  Irrespective of whether a cut-out in the curb would have prevented the injury or reduced the hazard, there is no evidence that such a cut-out was necessary.  At best, there is evidence of Mr. Malakas' subjective belief that a cut-out and better lighting were critical, not evidence that the existing state-of-affairs was objectively unreasonable.  *See Read v. Profeta*, 397 F. Supp. 3d 597, 625 (D.N.J. 2019) ("Unsupported allegations, subjective beliefs, or argument alone . . . cannot forestall summary judgment.").  Therefore, no reasonable juror could conclude that PATH was negligent with respect to the curb.

The curb aside, Mr. Malakas argues that the broader route in question presented various obstacles, but that employees were encouraged and permitted to use the route without any training around route selection.  (Opp. Br. at 9, 14).  In response, PATH argues that the evidence fails to show that employees were required to use the route or that insufficient time was provided for alternative routes.  (Mov. Br. at 12).

Even if the focus is shifted to the broader route, the Court still finds that PATH could not have breached a duty to Mr. Malakas, at least on the present record.  Since Mr. Malakas' knee

landed on the ballast and his arms hit the third rail, these so-called obstacles may have played a slight part in producing the injury.  However, there is no evidence that the so-called obstacles on the broader route were objectively unreasonable.  As an initial matter, there is no evidence that PATH mandated or encouraged use of the route, as uncontroverted testimony and images illustrate that the route was not required and that alternative routes were available.  Although the route was regularly used and may have been the most common or convenient passage to the Harrison Car Maintenance Facility, this evidence does not suggest that employees were pressured to forsake alternative routes.  Likewise, evidence that Mr. White would often walk through openings and step directly over guardrails does not suggest that employees were urged to use only the most convenient passages or that insufficient time was provided for less efficient routes.  Instead, uncontroverted testimony demonstrates that pulling the pit did not involve any time constraints. In any event, while the evidence may suggest that the route at issue was never intended as a passage, additional uncontroverted testimony shows that Mr. Malakas received training on how to safely traverse track areas, and Mr. Malakas and McGilberry completed forms that corroborated the relevant safety training and protocols.  In light of this evidence—and the absence of any other accidental occurrences or complaints—no reasonable juror could conclude that PATH was negligent to permit use of the route, irrespective of whether training was offered around route selection.

Accordingly, there is no dispute of material fact in regard to breach and summary judgment is appropriate on this ground.

### B.    Foreseeability

For the same reasons that PATH and Mr. Malakas contest the element of breach, the parties also contest the element of foreseeability.  (Mov. Br. at 18–20; Opp. Br. at 9; Reply at 7–9).  On

the present record, the Court cannot find that PATH possessed actual or constructive notice of the purported unsafe condition that resulted in injury to Mr. Malakas.

Clearly, PATH could not have been aware of any unsafe conditions with respect to the curb.  As explained above, the evidence indisputably indicates that there was no defect or other problem with the curb, and there is no indication that problems resulted from inadequate lighting or that a cut-out was necessary.  Therefore, the evidence does not support the assumption that the curb was unsafe absent a cut-out or better lighting, let alone that PATH knew or should have known that these improvements were needed.  For example, there is no indication that other employees complained about improvements or that the curb resulted in injuries to employees other than Mr. Malakas.

Similarly, PATH could not have been aware of any unsafe conditions with respect to the broader route.  As explained above, the evidence indisputably indicates that the route was not required and that alternatives were available, and there is no indication that employees were effectively compelled to choose that passage over other options.  At most, PATH could have been aware that Mr. Malakas was likely to choose the route, as the evidence supports the notion that employees such as Mr. White regularly utilized that passage or parallel options.  However, there is no indication that the route was unsafe, let alone that PATH could have been aware that closure or amelioration of the passage was needed.  Rather, the evidence suggests that Mr. Malakas received relevant safety training, and there is no indication that other employees sustained injuries or made complaints, despite the frequent usage of the track area.

Accordingly, there is no dispute of material fact in regard to foreseeability and summary judgment is appropriate on this ground as well.

## V.      CONCLUSION

For the reasons stated above, the motion for summary judgment is **GRANTED.**   An appropriate Order accompanies this Opinion.


Dated: December 28, 2023                                 _s/ Esther Salas_
                                                        **Esther Salas, U.S.D.J.**